# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**OTTER VALLEY FOODS, INC.,**

**Plaintiff,**

**-vs-**                                                   **Case No.  3:11-cv-351-J-37JRK**

**WINN-DIXIE STORES, INC., et al.,**

**Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendant Daymon Worldwide, Inc.'s ("Daymon") Amended Motion to Dismiss Amended Complaint[1] (Doc. No. 9), filed on June 13, 2011, and Defendant Winn-Dixie Stores, Inc.'s ("Winn-Dixie") Motion to Dismiss Amended Complaint (Doc. No. 13), filed on June 27, 2011.  Plaintiff Otter Valley Foods, Inc. ("Otter Valley") filed its responses (Doc. Nos. 14 and 16), and the motions are now ripe for disposition.

## BACKGROUND[2]

---

[1] Defendant Daymon filed this motion to correct a typographical error contained in its Motion to Dismiss Amended Counterclaim (Doc. No. 8).  Therefore, the Court denies Daymon's Motion to Dismiss Amended Counterclaim (Doc. No. 8) as moot, and considers its Motion to Dismiss Amended Complaint (Doc. No. 9) instead.

[2] The facts relevant to the present motions before the Court are derived from Plaintiff's Amended Complaint (Doc. No. 5 ¶¶ 8-25), filed on April 28, 2011.  Of course, the Court does not vouch for these allegations, but it must accept them as true for the purposes of deciding the Motions to Dismiss.

About three years ago, on or about August 28, 2008, Otter Valley entered into a requirements agreement ("Agreement") with Winn-Dixie and Daymon.  Under the Agreement, Otter Valley was to order proprietary packaging and to manufacture proprietary frozen dinner products under the Winn & Lovett brand for Winn-Dixie.  Winn-Dixie and Daymon required that Otter Valley produce sufficient proprietary packaged products according to the exact specifications and recipes authorized and approved by Winn-Dixie.  In performing under the Agreement, Otter Valley was to rely on Winn-Dixie's publication, "Winn & Lovett Frozen Dinners Program Overview, September 2008," regarding all supply requirements for the period from January 2009 to December 2010.  The publication included representations regarding a two-year marketing plan, two years of projected financial performances, and two years of profit charts for the proprietary products.

Relying upon Winn-Dixie's and Daymon's instructions and representations, Otter Valley made five production runs of proprietary packaged products: November 2008, December 2008, January 2009, February 2009, and March 2009.  In January 2009, a draw order for $526,180.39 was placed, accepted, and paid by Winn-Dixie.  In February 2009, a draw order for $112,660.11 was placed, accepted, and paid by Winn-Dixie.  From March to May 2009, Winn-Dixie placed, accepted, and paid for draw orders totaling $52,060.41.

On or about April 6, 2009, Daymon, on behalf of Winn-Dixie, advised Otter Valley that, "Distribution is up to 84% on average."  Under the terms of the Agreement, Winn-Dixie and Daymon instructed Otter Valley to maintain certain inventory levels, sufficient to satisfy Winn-Dixie's agreed-upon and anticipated supply needs.  On or before July 17, 2009, Daymon and Winn-Dixie knew that,

-2-

in reliance on and in accordance with their instructions, Otter Valley had $900,000.00 of packaged proprietary products in inventory.  Winn-Dixie was yet to order, deliver, or pay for this inventory.  In good faith effort to mitigate the potential damages, Otter Valley offered Winn-Dixie a significant discount for the proprietary products, while Winn-Dixie and Daymon committed to a promotional program with Winn-Dixie to increase sales of the products.  From June to November 2009, Winn-Dixie ordered, accepted, and paid for $146,962.12 worth of packaged products.

On or about February 5, 2010, Daymon, on behalf of Winn-Dixie, advised Otter Valley via telephone that Winn-Dixie would not be placing any further orders for the proprietary products.  On or about March 4, 2010, Otter Valley advised Winn-Dixie and Daymon that it was holding $34,496 in empty proprietary packaging and $767,114 in packaged proprietary products.

On April 13, 2011, Otter Valley filed the present lawsuit alleging a breach of contract claim against Winn-Dixie and Daymon.  Both Defendants seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  To these motions the Court now turns.

## STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The federal rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (internal quotations omitted).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). The alleged facts in the complaint must be accepted as true and be construed in the light most favorable to the plaintiffs. *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

## DISCUSSION

In its Motion to Dismiss Amended Complaint (Doc. No. 9), Daymon argues that the complaint should be dismissed for two reasons: (1) because it fails to allege the elements necessary to sustain a claim for breach of contract against Daymon, and (2) because the contract that serves as the basis for the complaint is a legally unenforceable contract pursuant to Florida Law. (*Id.* p. 3.) The contract is unenforceable, argues Daymon, because there was no agreement as to the essential terms, no meeting of the minds, and the attached e-mail correspondence shows pure negotiation, not a concluded agreement. (*Id.* p. 9.) Winn-Dixie joins Daymon's argument that the Agreement is legally unenforceable under Florida law. (*See generally* Doc. No. 13.) In support of this argument, both Daymon and Winn-Dixie heavily rely on the court's opinion in *Suggs v. DeFranco's, Inc.*, 626 So. 2d 1100, 1100 (Fla. 1st DCA 1993).[3] There, the appellate court reversed trial court's judgment

---

[3] The Court did not disregard other case law presented in the parties' filings. After its review of the same, the Court simply omits the cases from its discussion as they are easily distinguishable from the facts alleged in the Amended Complaint, and do not warrant any further analysis.

because it erroneously found that a provision in a letter was a binding settlement agreement, when it lacked the essentials of a contract, leaving the essential terms of the agreement open and subject to future negotiation. *Id.* Here, Daymon and Winn-Dixie assert, the parties were still negotiating and there was no meeting of the minds. (Doc. No. 9 p. 6; Doc. No. 13 p. 5.) Therefore, they argue, the Court should dismiss the Amended Complaint because no contract existed.

The Court finds that the holding in *Suggs* is inapposite. Here, the Court is faced with a different set of facts to which common law contract formation rules do not apply. The facts of this case involve the sale of goods between merchants, and therefore, the Uniform Commercial Code ("UCC"), as adopted by Florida in 1965, governs.

To establish a breach of contract, plaintiff must prove that: "(1) a contract existed[;] (2) the contract was breached[;] and (3) damages flowed from that breach." *A.R. Holland, Inc. v. Wendco Corp.*, 884 So. 2d 1006, 1008 (Fla. 1st DCA 2004). The Florida Supreme Court has held that in order to establish that a contract existed, plaintiff must plead the basic contractual requirements: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). However, when the contract at issue is a requirements contract, lack of specification of the essential terms, such as the price, quantity, and time of performance, does not make the terms:

> too indefinite . . . . Nor does such a contract lack mutuality of
> obligation since . . . the party who will determine quantity is required
> to operate his plant or conduct his business in good faith and according
> to commercial standards of fair dealing in the trade so that his output
> or requirements is expressly envisaged . . . .

Fla. Stat. Ann. § 672.306 (West 2011), Uniform Commercial Code cmt. 2. Additionally, Fla. Stat.

§ 672.204(3) states that, "Even though one or more terms are left open, a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." *Id.*; *see also Pullam v. Hercules Inc.*, 711 So. 2d 72, 74 (Fla. 1st DCA 1998) (stating that, "Where a contract is for a specified time and obligates the purchaser to buy all that he or she needs from the vendor, . . . purchaser's obligation to buy to the extent of his or her requirements supplies mutuality.").

Otter Valley alleges a breach of a requirements contract, where Winn-Dixie, through Daymon, agreed to buy certain products, packaged to its exact specifications, from Otter Valley for a two-year period. (*See generally* Doc. No. 5.)  The Court finds that in the Amended Complaint, Otter Valley sufficiently alleges that a contract existed, that it was breached, and that the damages resulted from that breach.  Otter Valley contends that in furtherance of performing under the Agreement, it relied on Winn-Dixie's and Daymon's promise to buy the products, specifically manufactured the products for them, and made five production runs which Winn-Dixie accepted and paid.  It also alleges that Defendants breached the Agreement when they notified Otter Valley, before the expiration of the two-year period, that Winn-Dixie will no longer require its products.  Lastly, Otter Valley alleges that the damages flowing from such breach exceed $700,000.  Construing the factual allegations in the Amended Complaint in light most favorable to Otter Valley, the Court finds that Otter Valley sufficiently stated a breach of contract claim against Winn-Dixie.

As for Otter Valley's breach of contract claim against Daymon, the Court agrees with Daymon that such claim should be dismissed.  "Under Florida law, an agent is not liable for a disclosed principal's obligations under a contract that the agent negotiated or executed on behalf of the

principal." *Johnson v. Wellborn*, No. 10-12494, 2011 WL 914302, *5 (11th Cir. March 17, 2011) (citing *Babul v. Golden Fuel, Inc.*, 990 So. 2d 680, 683 (Fla. 2d DCA 2008)).   In the Amended Complaint, Otter Valley identifies Daymon as an "agent of Winn-Dixie, acting under the knowledge, authority, direction, and control of Winn-Dixie." (Doc. No. 5 ¶ 5) (emphasis removed).   Nowhere in the Amended Complaint does Otter Valley suggest that Daymon was acting outside the course and scope of its agency relationship with the disclosed principal, Winn-Dixie, or that Daymon acted in any other capacity.   Therefore, as an agent of a disclosed principal, Daymon cannot be held liable under the Agreement that it negotiated or executed on behalf of Winn-Dixie.

Based on the foregoing, it is ordered as follows:

1.      Defendant Daymon Worldwide, Inc.'s Amended Motion to Dismiss Amended Complaint (Doc. No. 9), filed on June 13, 2011, is GRANTED to the extent that the Amended Complaint against Daymon Worldwide, Inc. is DISMISSED.   The Clerk shall terminate the said Defendant from the docket.

2.      Defendant Winn-Dixie Stores, Inc.'s Motion to Dismiss Amended Complaint (Doc. No. 13), filed on June 27, 2011, is DENIED.

3.      Defendant Daymon Worldwide, Inc.'s Motion to Dismiss Amended Counterclaim (Doc. No. 8), filed on June 13, 2011, is DENIED as MOOT.

4.      Defendant Daymon Worldwide, Inc.'s Unopposed Motion to Stay Discovery or, Alternatively, for Extension of Time to Respond to Written Discovery (Doc. No. 25), filed on September 8, 2011, is DENIED as MOOT.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on September 8, 2011.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party